[No. A111153. First Dist., Div. One. July 20, 2006.]

MAURICE DUNBAR, Plaintiff and Appellant, v.
ALBERTSON'S, INC., Defendant and Respondent.

### Counsel

Scott Cole & Associates, Matthew R. Bainer, Scott Edward Cole and Clyde H. Charlton for Plaintiff and Appellant.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, W. Randolph Teslik, Karen J. Kubin and Jessica M. Weisel for Defendant and Respondent.

### Opinion

**MARCHIANO, P. J.**—Plaintiff Maurice Dunbar, a grocery manager for defendant Albertson's, Inc., seeks overtime compensation and other relief on the theory that defendant erroneously classified him as an executive employee exempt from the overtime wage laws. He appeals from the order denying his motion for certification of a class of defendant's grocery managers to pursue these same claims. He contends that the order must be reversed because the court failed to apply proper criteria, and neglected to perform necessary analysis, in deciding whether common questions were predominant in the case. We find no error in the court's determination of the matter and affirm the order.

## I. BACKGROUND

### A. *Evidence*

Defendant owns and operates approximately 500 grocery stores in California. Each store generally has a grocery manager, and a store director to whom the grocery manager reports; the grocery manger is "the second person [in charge] in the store." The putative class consists of approximately 900 individuals who have worked as grocery managers for defendant since March 2000.

In support of the motion for class certification, plaintiff filed among other things his declaration and virtually identical declarations of 61 other grocery managers stating that the great majority of their work time was spent in the allegedly nonmanagerial tasks of "walking the floor" to verify that inventory was properly stocked, stocking shelves, organizing the stock room, unloading

new merchandise, responding to customer questions, cashiering, putting price tags on items, checking inventory, and doing routine paperwork.

In opposition, defendant lodged, inter alia, declarations of 79 grocery managers, including a number of managers who had executed declarations for plaintiff, describing in varied terms their allegedly executive work at different stores, and excerpts from the depositions of some of plaintiff's declarants. This evidence was accompanied by a chart outlining how the deposition testimony and counterdeclarations differed from the declarations plaintiff submitted. Defendant also presented statistics on the varying amounts of time plaintiff's declarants spent working cash registers each week during the period from July 2004 through April 2005.

In reply, plaintiff filed, inter alia, 31 more grocery manager declarations, some identical to those originally filed but from different grocery managers, and others from plaintiff's original declarants, explaining their declarations or deposition testimony submitted by defendant.

This evidence was synthesized in the points and authorities, where plaintiff took the position that common issues of classification—whether the grocery managers' different tasks were exempt or nonexempt—would predominate, and defendant argued that individualized issues of liability and damages— determining which tasks each manager performed and for how long—would predominate, given the variation in the work of different managers.

B. *Hearing on the Motion*

At the outset of the hearing on the motion, the court commented on the large volume of evidence submitted, and remarked that the case "present[ed] a good illustration of the weighing process that the Court necessarily must undertake in determining the commonality principles that apply in class certification."

Plaintiff proposed handling the case in three phases, with class certification as phase one, categorization of tasks as exempt or nonexempt as phase two, and individualized determinations of liability and damages as phase three. With respect to phase two, plaintiff presented a list of 20 tasks allegedly constituting all of the work grocery managers performed. With respect to phase three, plaintiff suggested that individual issues could be effectively managed with the use of exemplar plaintiffs, survey results, subclassing, minitrials, or special masters.

Defendant noted that the analysis "of whether common issues predominate over individualized issues . . . is a comparative one," observed that the court

would have "to weigh the evidence, assess credibility, and determine based on the record" which issues predominated, and argued that its evidence could be credited over that of plaintiff in evaluating the extent to which the claims of the putative class were susceptible of common proof. Defendant submitted that, compared to the individual liability and damage issues, the common classification issues could be resolved relatively easily, and partially through stipulation. Defendant argued that the individual issues could not be resolved with exemplar plaintiffs or survey results, and that plaintiff had not met his burden of showing how such issues could be effectively managed.

## C. *Order on the Motion*

The court filed a 14-page order denying the motion. In it, the court concluded that many of the conditions for class certification were met, but that common issues did not predominate, and that a class action was not the superior means of resolving the litigation. On the latter point, the court reasoned that class members were reasonably likely to prosecute their individual claims, that a class action was not necessary to deter and redress the alleged wrongdoing, and that there were alternative procedures for handling the controversy, including administrative adjudication. The court thought that "the different factual circumstances of the absent class members in this case will require their active participation in the resolution of their claims."

With respect to commonality, the court wrote:

"Class certification is determined with reference to each claim asserted and commonality is determined in the context of the claims asserted. *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916, fn. 22 [107 Cal.Rptr.2d 761]. The allegedly common inquiry in this case is whether the class members fall [within] the executive exemption under Wage Order 7-2001. [Title] 8 Cal. Code Regs. 11070(1)(A)(1)(e) states, 'The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.' Under California law, the Court must determine whether any given class member (or all the class members) spend more than 51% of their time on managerial tasks in any given workweek. *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785 [85 Cal.Rptr.2d 844, 978 P.2d 2]. Because the regulation references 'the work actually performed by the employee during the course of the workweek,' the Court is inclined to hold that . . . employees exempt or non-exempt status can vary on a week by week basis. *Counts v. S.C. Elec. & Gas Co.* (4th Cir 2003) 317 F.3d 453

(reference in regulations to 'workweek' suggests that classification is examined on a week to week basis).

"Plaintiff asserts that common issues of fact predominate because each class member had the same job title, the same job description, performed the same duties, and was required to follow the same policies and procedures. Plaintiff argues that the classification of Grocery Managers as 'executive positions' reflects a single policy decision that affects hundreds of employees, and employees should be able to contest it in a single action. [*Sav-On Drug Stores, Inc. v. Superior Court* (2004)] 34 Cal.4th 319, 329–330 [17 Cal.Rptr.3d 906, 96 P.3d 194] (evidence of a standardized or uniform policy or practice may justify class certification). Plaintiff has also submitted declaration and deposition testimony from 62 individuals indicating that the putative class members performed common tasks.

"Defendant contends that the job titles and descriptions are essentially irrelevant to the Court's inquiry because the Court is required to make an individualized factual inquiry into how each class member actually spent his or her time. Defendant asserts that the Grocery Manager training is not uniform and that store operations vary depending on the size, hours, and location of the stores. Defendant represents that the proportion of time spent on the Grocery Managers' various tasks depends upon factors such as: store size, the number and type of peripheral departments (e.g. florist, photo processing lab, bakery, Starbucks, butcher shop), the demographic makeup of the local community, the incidence of criminal activity in the surrounding neighborhood, and the Store Director's personal management style (the Store Director is the Grocery Manager's immediate superior and the person primarily responsible for a given store location). Defendant also argues that the GM is second in command after the Store Manager and that the responsibilities of each GM will vary depending on his or her relationship with the Store Manager.

"Plaintiff has not demonstrated that common issues predominate.

"First, although Defendant has made a single policy decision to classify hundreds of GMs as exempt, that single policy decision may be improper as to some putative class members but proper as to others. *Morisky v. Public Serv. Elec. & Gas Co.* (D.N.J. 2000) 111 F.Supp.2d 493, 498. Therefore, although the evidence of a standardized or uniform policy or practice can support class certification it does not compel class certification.

"The Court has considered other situations where a single allegedly wrongful action has different effects on different persons so that some have claims and some do not. In such cases, the Courts will generally certify a

class if the defendant's action can be found to be wrong in the abstract even if no individual person has been damaged. *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292–1294 [119 Cal.Rptr.2d 190] (misrepresentations), *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1278 [242 Cal.Rptr. 339] (erroneous[] interpretation of legislation), *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1352–1353 [235 Cal.Rptr. 228] (antitrust violations). These situations are distinguishable from situations where the Court cannot determine the wrongfulness of an action without reference to individuals. *McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 500 [98 Cal.Rptr.2d 208] (class treatment not appropriate for challenging whether employment policy was discriminatory to disabled individuals); *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 810–811 [50 Cal.Rptr.2d 736] (class treatment not proper for claims that latex gloves caused injuries to certain persons).

"In this case, the Court cannot determine whether Defendant's policy of designating GMs as exempt is unlawful in the abstract. If the Court found that the policies were appropriate as applied to 70% of the GMs and inappropriate with respect to the remaining 30%, that finding would not permit the conclusion that the policies are unlawful. The hypothetical finding would indicate the policies are applied to too many employees and lead the Court to visit the issue of ascertaining which employees are in the 70% that should be in the class and which are in the 30% that should not be in the class. Therefore, Plaintiff cannot meet the commonality requirement by simply making reference to the common policy.

"Second, as a general proposition, in determining whether an employee is exempt or non-exempt, the Court should engage in a fact specific inquiry rather than simply review the job description. *Ramirez v. Yosemite Water Co., [supra,]* 20 Cal.4th 785, 802. See also *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 569 [38 Cal.Rptr.2d 221] (television station sports director held to be a non-exempt employee entitled to overtime pay even though in a different action a Federal Court had held that the plaintiff's successor in the exact same job was an exempt employee). Therefore, the Court focuses on the evidence concerning the actual experiences of the class members rather than on the formal job descriptions and policies.

"Third, the Court has considered the only contemporaneous time records that bear on the commonality issue—the records concerning when GMs were operating cash registers . . . [¶] . . . [¶]

"The information . . . shows that in a 29 week period a class member worked the cash register significantly more or less in different weeks—he

worked more than 8 hours per week for 10 of the weeks and less than 2 hours per week for 6 of the weeks. This suggests that the work of that GM varied significantly on a week to week basis. The Court is inclined to presume that the work of other GMs varied in a similar manner.

"Fourth, the Court has reviewed the declarations and depositions at some length. This is a fact intensive review. Plaintiff presented approximately 62 declarations of GMs, each of which states that the declarant routinely spent over 50% of his or her time on non-exempt functions. Defendant presented declarations from a similar number of GMs (including from some of the same GMs), most of which state that the declarant's work varied by work location and time of year, and that the declarant spent most of his or her time on exempt functions. This record requires the Court to weigh the evidence.

"In weighing the evidence, the Court is not evaluating whether the claims asserted are legally or factually meritorious. [*Linder v. Thrifty Oil Co.* (2000)] 23 Cal.4th 429, 439–40 [97 Cal.Rptr.2d 179, 2 P.3d 27]. The Court is evaluating only whether common issues predominate. The Court gives the greatest weight to deposition testimony because it reflects a witness's actual testimony on cross examination and (unlike declarations and interrogatory responses) cannot be scripted by counsel. Plaintiff's declarations are general in nature and may be tainted by hostility to Defendant. Evidence Code [section] 780. The Court has considered the role Plaintiff's counsel played in drafting the declarations. The Court has not drawn any adverse inferences because Plaintiff may have prior and arguably more detailed declarations from the witnesses that Plaintiff elected not to use in this motion. Counsel can determine the contents of the direct testimony that they present to the Court. Defendant's proffered declarations are more factually detailed and individualized, but may be tainted by bias because many declarants are current employees. The Court has also considered the role that Defendant's counsel played in drafting those declarations and presenting them to the witnesses. The Court has not based its decision in the volume of declarations submitted. Evidence Code [section] 411.

"The Court finds that the deposition testimony of many witnesses suggests that the work of many GMs varied significantly. The declarations submitted by Defendant demonstrate similar variety in the work performed by different GMs. These depositions and declarations are credible and suggest that the work performed by the GMs varied significantly from store to store and week to week.

"Fifth, the Court has considered the argument of Plaintiff that all the GMs performed the same tasks and that the determination of whether a task is managerial will be a common issue. It is true that there is a common issue

whether stocking shelves and running cash registers are managerial tasks, but that is not the central focus of the commonality inquiry. If that were the inquiry, then the class could include employees at Albertson's, Safeway, Andronico's and every other grocery chain (and perhaps every retailer). The Court is focusing on whether the work performed by any one GM is so similar to the work performed by any other GM that the Court can reasonably extrapolate findings from the named plaintiff to the absent class members.

"The court has considered that a class can be certified where each class member must establish the amount of his or her damages. This is not such a situation, because here each class member would need to establish entitlement to damages as well as the amount of damages.

"Based on its review and weighing of the evidence, the Court finds that Plaintiff ha[s] not demonstrated the commonality required for class certification. In particular, the Court has relied on the deposition and declaration testimony indicating that the work performed by the GMs varied significantly from store to store and week to week."

## II. DISCUSSION

██ "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citations.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]

". . . A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] . . .

"We review the trial court's ruling for abuse of discretion. 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification . . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made

[citation]" [citation] . . . . "Any valid pertinent reason stated will be sufficient to uphold the order." ' [Citations.]" (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at pp. 326–327.)

Plaintiff acknowledges that issues of liability (the amount of time spent by class members on exempt versus nonexempt tasks) and damages (the number of overtime hours worked by class members) "might require individual inquiries." However, he believes that "the 20 analyses susceptible to common proof [whether each of the grocery managers' tasks is exempt or non-exempt] wholly predominated over the two easily-manageable individualized inquiries [liability and damages]." The trial court saw things differently. As we read the court's decision, it in effect concluded that 900 individual inquiries—one for each grocery manager—would be required, because findings as to one manager could not "reasonably [be] extrapolate[d]" to others, given the significant variation in the work performed by grocery managers from store to store and week to week, as shown by defendant's evidence.

Plaintiff does not argue that the court lacked substantial evidence from which to find that individual issues were predominant, but rather that the finding was based on "improper criteria" (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 327). His arguments in this regard are far from persuasive.

Plaintiff maintains that the court mistakenly believed that, as a matter of law, a class could not be certified because there were individual issues of liability. (See *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 333 [" 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery' "].) The necessity for individualized liability determinations was indeed a factor in the court's decision. As the court observed, that factor served to distinguish situations where the wrongfulness of the defendant's conduct could be determined in the abstract, without individual proof. But the presence of individual liability issues was only one factor, not the controlling factor, in the court's decision. The most important consideration, in the court's view, was the significant variation in the grocery managers' work from store to store and week to week. In light of that variation, the court evidently believed that very particularized individual liability determinations would be necessary.

Accordingly, the court's decision was not based on the mere presence of individual liability issues; it turned on the *nature* of those issues as shown by defendant's evidence. The decision was thus on solid legal footing. As we observed in *Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 40 [10 Cal.Rptr.3d 82]: " '. . . the community of interest requirement is

not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" determining issues common to the purported class. [Citation.]' [Citation.]" ▇ Plaintiff asserts that the court here erred in the same manner as the trial court in *Conley v. Pacific Gas & Electric Co.* (2005) 131 Cal.App.4th 260, 264 [31 Cal.Rptr.3d 719], but he is evidently referring to the unpublished portion of that opinion, which cannot be considered.[1] (Cal. Rules of Court, rule 977.)

Plaintiff posits that a predominance analysis proceeds in three steps, and contends that the second and third of them were neglected by the court here. Plaintiff submits that the court must: first, identify the common and individual issues; second, consider the manageability of those issues (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 339 [" 'the trial court has an obligation to consider the use of . . . innovative procedural tools proposed by a party to certify a manageable class' "]); and third, taking into account the available management tools, weigh the common against the individual issues to determine which of them predominate.

▇ As to the second step, the record does not establish that the court failed to consider the use of exemplar plaintiffs, survey results, subclassing, or the other means plaintiff mentioned of managing individual issues. The court impliedly rejected those proposals in concluding that findings as to one grocery manager could not reasonably be extrapolated to others given the variation in their work.[2] It is not sufficient, in any event, simply to mention a procedural tool; the party seeking class certification must explain how the procedure will effectively manage the issues in question, and plaintiff has failed to do so here. (See *Block v. Major League Baseball* (1998) 65 Cal.App.4th 538, 545 [76 Cal.Rptr.2d 567] [court not required to consider

---

[1] The relevant reasoning is not apparent from the published portion of the opinion, which states: "The trial court denied certification of these classes on two grounds: first, that due to individual differences in the actual tasks performed by each specific member of the proposed classes, common issues did not predominate; and second, that due to the availability of alternative relief through administrative proceedings, a class action would not be a superior method of adjudicating the claims of the proposed class members. Appellants argue that developments in the case law since the trial court issued its ruling, particularly [*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th 319], have called into question the key premises of the trial court's legal analysis. For the reasons explained in the unpublished portion of this opinion, we agree . . . ." (*Conley v. Pacific Gas & Electric Co., supra,* 131 Cal.App.4th at p. 264.)

[2] Plaintiff quibbles that this conclusion was couched merely in terms of whether findings from "the named plaintiff" could be extrapolated to "the absent class members." In the sentence in question, the court said it was "focusing on whether the work performed by *any one* GM is so similar to the work performed by *any other* GM that the Court can reasonably extrapolate findings from the named plaintiff to the absent class members." (Italics added.) It is apparent from the italicized language that the court was referring to extrapolation from any member of the putative class, not just from plaintiff.

subclasses when not given "a concrete proposal describing how such subclasses would be defined, how they would be administered, or how they would help the court deal with the complexities inherent in the proposed class"]; see generally *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326 [party seeking certification bears burden of establishing predominance of common questions]; *Frieman v. San Rafael Rock Quarry, Inc., supra,* 116 Cal.App.4th at p. 34 [moving party bears burden of demonstrating that substantial benefits will result from class certification].)

As for the third step, the record refutes plaintiff's claim that the court failed to compare the relative weights of the common and individual issues. This claim is based on some questions the court asked (among many others) at the hearing on the motion,[3] and on what plaintiff describes as the decision's "singular focus" on individual issues.

At the hearing and in the order on the motion, the court expressly recognized its obligation to weigh the common issues against the individual issues to determine which were predominant. The court noted at the hearing that there was a "weighing process [it] necessarily must undertake," and confirmed in its decision that it had "weigh[ed] the evidence" to decide "whether common issues predominate." The court performed its duty on the motion thoughtfully and thoroughly, and we have no cause to disturb its determination.

---

[3] At one point in the discussion, plaintiff represented that grocery managers "reject[ed]" only a small percentage of the 20 tasks they were called upon to perform, which meant that they "do these tasks either affirmatively or by a lack of rejection tacitly admit . . . [that] these tasks . . . [¶] [are within their job responsibility.]" The court then asked, "But how does that help insofar as the commonality analysis with reference to the issue of whether or not it is common for all grocery managers or the majority or the substantial bulk of grocery managers to devote more than 51 percent of their time to nonexempt tasks?" When plaintiff replied that "an analysis of which duties are exempt or nonexempt [could be done] on a class-wide basis," the court responded: "Let's assume just for the sake of discussion that the Court were inclined to certify a class of grocery manager just for the purpose of deciding which of the job descriptions under the title 'Grocery Manager' are truly nonexempt responsibilities. . . . [¶] . . . [¶] I think there would probably be stipulations among the parties as to many of these topics as to whether they are classically managerial tasks or employee or non-managerial tasks. . . . [¶] So what do we get by that process, agreeing that certain of these 20 tasks are managerial in nature and others are non-managerial in nature? Suppose we come to a determination of all of those things. How does that help resolve the claims of Mr. Dunbar and all the other 900 grocery managers?"

We do not agree with plaintiff that these questions showed that the trial court thought the relative weight of common issues was "irrelevant," or "revealed [the court's] lack of interest" in balancing common classification issues against individualized liability and damages issues. It appears to us, both from the quoted portion of the transcript and from the transcript as a whole, that the court was actively engaged in the weighing process, and attempting to take all of the issues and evidence into account.

## III. DISPOSITION

The order denying class certification is affirmed.

Swager, J., and Margulies, J., concurred.