Michael MARLO, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., a corporation, Defendants.

No. CV 03–04336 DDP (RZx).

United States District Court, C.D. California.

May 19, 2008.

John A Furutani, Mark C. Peters, Furutani and Peters, Pasadena, CA, for Plaintiff.

George W. Abele, Jennifer S. Baldocchi, Kirby Collette Wilcox, William S. Waldo, Paul Hastings Janofsky & Walker LLP, Los Angeles, CA, for Defendants.

## ORDER DECERTIFYING THE CLASS

DEAN D. PREGERSON, District Judge.

This matter is before the Court on the Court's Order Setting a Decertification Hearing. (Order Setting Decertification Hearing, April 1, 2008.) Michael Marlo ("Plaintiff") filed this action, on behalf of himself and a class of similarly situated individuals ("the class"), against United Parcel Service, Inc. ("UPS") for violations of California state law wage-and-hour law. A class was certified pursuant to Federal Rule of Civil Procedure 23 on June 10, 2004. After meeting with the parties on several occasions, reviewing the many papers submitted by the parties in this action, and hearing oral argument, the Court

finds that it is appropriate to decertify the class.

## I. BACKGROUND

In 2003, Plaintiff Marlo filed a class action complaint against UPS that asserted several claims, including failure to pay overtime compensation and failure to provide meal and rest breaks in violation of California law. The Court granted Plaintiff's motion for class certification on June 10, 2004. The class was composed of all UPS employees working in California in the capacity of Full–Time Preload Supervisors, Full–Time Package Center Supervisors (also known as "On Road Supervisors"), and Full–Time Hub Operations Supervisors (collectively "Full–Time Supervisors" or "FTS") from May 6, 1999 to the present. (Order Granting Class Certification, June 10, 2004.)

UPS's Motion For Summary Judgment Or, In the Alternative, Partial Summary Judgment Based On the Executive and Administrative Exemptions ("UPS's Motion For Summary Judgment"), and Plaintiff Marlo's Motion For Partial Summary Judgment As To Executive Exemption and Motion For Partial Summary Judgment As To Administrative Exemption ("Plaintiff's Motions For Partial Summary Judgment") came before the Court on August 17, 2005. On August 23, 2005, the Court granted Defendant's Motion For Summary Judgment and denied Plaintiff's Motions For Partial Summary Judgment, which resolved all the claims presented in the complaint in UPS's favor as to Plaintiff and all members of the class. (Order Granting Defendant's Motion for Summary Judgment, August 23, 2005.)

On October 25, 2007, the Ninth Circuit reversed and remanded the case. *Marlo v. UPS, Inc.*, 254 Fed.Appx. 568 (9th Cir. Oct. 25, 2007). The Ninth Circuit held that Plaintiff had "raised material issues of fact related to whether the FTS 'customarily and regularly exercised discretion and independent judgment.'" *Id.* This Court held a remand hearing on January 25, 2008. At that hearing, the Court indicated that the case should proceed to trial. Subsequently, the Court met with the parties on several occasions to discuss various substantive and management

issues in preparation for trial, and also received a number of briefs on those issues. During the course of these sessions, the Court became increasingly concerned that individualized issues may predominate over class-wide issues, and that as a result, Plaintiff's class may no longer satisfy the Rule 23 requirements. The Court thus decided to entertain further briefing from the parties and to have an additional hearing regarding decertification.

## II. LEGAL STANDARD FOR CLASS DECERTIFICATION

██ The district court's order to grant class certification is subject to later modification, including class decertification. *See* Fed. R. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 11, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (describing a court's class certification order as "inherently tentative"); *see also Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir.1982). In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met. *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D.Cal. 2000).

Rule 23(a) requires that class members demonstrate numerosity, commonality, typicality, and adequate representation of the class interest. Fed. R. Civ. Pro. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Rule 23(b)(3) additionally requires that the court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3).

██ Although certification decisions are not to focus on the merits of a plaintiff's claim, *see Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), a district court reevaluating the basis for certification may consider its previ-

ous substantive rulings in the context of the history of the case, *O'Connor*, 197 F.R.D. at 410, and may "consider the nature and range of proof necessary to establish the [class-wide] allegations." *Id.* (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir.1982)) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975)).

## III. DISCUSSION

Here, the Court considers decertification of a class of approximately 1200 supervisors that work for UPS. In what follows, the Court first mentions the changed circumstances since the initial certification decision, that along with more basic concerns about common proof of misclassification, support considering decertification. The Court then discusses California law on the overtime exemption in the context of a class action lawsuit and examines the burden of proof on misclassification in a class action trial. After a brief review of the parties' evidence in this case, the Court proceeds to the Rule 23 inquiry, which focuses on whether there is commonality and whether there is a predominance of common issues such that class treatment remains appropriate.

### A. *Changes Since The Court's Certification Order*

In its Order granting class certification, the Court found that the Rule 23(a) and Rule 23(b)(3) requirements had been satisfied. Among its findings, the Court determined that there was commonality and a predominance of common issues based upon class members' similar job duties, UPS's overtime exemption policy, and the predominant legal question was "whether UPS wrongly classified Full Time Supervisors as exempt from overtime compensation." (Order Granting Class Certification, at 6, 13.) Notably, the Court accepted Plaintiff's representation that common proof of misclassification would be offered to determine the class-wide applicability of the exemption.[1]

Plaintiff contends that decertification is inappropriate because circumstances supporting class treatment have not changed: UPS maintains a uniform exemption policy and the evidence shows that this policy is one of misclassification. (Pl.'s Opp'n to Decertification, at 2–3.) However, since certification, the Court has addressed both parties' motions for summary judgment, which required an in-depth review of the evidence that would support each party's case at trial. While the Ninth Circuit reversed the Order granting UPS summary judgment, many of the concerns expressed by the Court in that Order remain. Then and now, the Court was concerned about the class-wide applicability of the evidence. (*See* Order Granting Defendant's Motion for Summary Judgment, 9, 14, 15–16, 33, 36.) In light of the individualized nature of some aspects of the exemption test, this concern has ripened into doubt regarding the continuing efficacy of a class action in this case.

The Court has continued to struggle with these concerns while meeting with the parties in an effort to resolve a number of issues to manage a trial in this action. Plaintiff's counsel have not adequately explained how they intend to try this case, have not supported their assertion to having representative evidence, and have otherwise failed to take affirmative steps to assist the Court in management of trial. Ultimately, these meetings with counsel have further confirmed the need to reevaluate the initial certification decision.

■ Indeed, the Court does not doubt that Plaintiff has shown triable issues of fact whether at least some FTS are exempt or nonexempt employees. However, in rethinking this case, the Court has come to realize that whether Rule 23 requirements are satisfied, especially commonality and predominance of common issues, and whether a party has common evidence to enable a fact-finder to make a class-wide determination are interrelated inquiries.[2] In retrospect, the

---

1. (Order Granting Class Certification, at 12.) ("[P]laintiff asserts that the manner in which [FTS] spend their time can be determined without individualized proof.")

2. The Court is careful to distinguish this observation from the kind of merits-determination that is disfavored with respect to class certification decisions. When considering class certification, a

Court recognizes that its concerns with common proof of class-wide misclassification at the summary judgment stage would best have been directed to the question whether decertification was appropriate. *See O'Brien v. Sky Chefs, Inc.,* 670 F.2d 864, 869 (9th Cir.1982), *overruled on other grounds by Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477 (9th Cir.1987) (finding where "plaintiffs produced no evidence of classwide discrimination" that "decertification of the class was more appropriate than summary judgment against the class").

Having explained the changed circumstances in this case and before turning to the Rule 23 inquiry, the Court will discuss California law on the overtime exemption in a class action.

### B. *California's Executive Exemption in Class Actions*

California law requires that all employees receive overtime compensation and authorizes civil actions for the recovery of unpaid compensation. California Labor Code §§ 510, 1194.[3] California law exempts from overtime pay those persons employed in executive or administrative capacities. The executive exemption applies to any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption....

8 C.C.R. § 11070(1)(A)(1).

Wage-and-hour class actions challenging an employer policy of exempting employees have been certified based upon common proof of misclassification. *See, e.g., Sav-on Drug Stores, Inc. v. Superior Court of Los Angeles,* 34 Cal.4th 319, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D.Cal. 2006); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D.Cal.2005). Some courts, on the other hand, have denied certification of classes challenging misclassification when the evidence showed individual differences in employee duties such that individualized issues would predominate over class-wide determinations. *See, e.g., Sepulveda v. Wal-Mart Stores,* 237 F.R.D. 229, 249 (C.D.Cal. 2006); *Jiminez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 252 (C.D.Cal.2006); *Dunbar v. Albertson's, Inc.,* 141 Cal.App.4th 1422, 47 Cal.Rptr.3d 83 (2006).

 The burden of proof in a class action trial on the executive exemption has been an issue of dispute in this case addressed several times at hearings and meetings with the parties. Under California law, the employer bears the burden of demonstrating that an employee is exempt from the Labor Code's overtime requirements. *Nordquist v. McGraw-Hill Broadcasting Co., Inc.,* 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 (1995). However, in order to maintain a class action challenging the overtime exemption, a plaintiff must have common evidence to support a legal theory of misclassification, either "that deliberate misclassification was defendant's policy or practice" or similarly, that "classification based on job descriptions alone resulted in widespread de facto mis-

---

court should not weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim. *See Eisen,* 417 U.S. at 178, 94 S.Ct. 2140. However, this principle does not prevent a court from comparing the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification.

**3.** Under section 3(A) of the Industrial Welfare Commission ("IWC") Wage Order, employees must be compensated at 1.5 times the employee's normal rate of pay for all overtime worked. IWC Wage Order No. 9, codified at 8 California Code of Regulations ("C.C.R.") § 11070.

classification." *Sav–On Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 329, 17 Cal. Rptr.3d 906, 96 P.3d 194 (2004).[4] A class action is appropriate if "plaintiffs are able to demonstrate pursuant to either scenario that misclassification was the rule rather than the exception...." *Id.* at 330, 17 Cal.Rptr.3d 906, 96 P.3d 194.

The subject of the dispute over the burden of proof has concerned whether there is any difference between an individual case, where it is well-established that an employer has the burden of proving that the overtime exemption was appropriate, and a class action challenging an employer's decision to classify as exempt a group of employees. UPS has argued that Plaintiff in bringing this case as a class action has the burden of ultimately proving misclassification on a class-wide basis. UPS has also suggested that trial be organized in a similar fashion to pattern-and-practice discrimination cases, with Plaintiff having to make out a prima facie case, UPS providing evidence to show that its exemption decision was legitimate, and Plaintiff having the ultimate burden of proving misclassification. (Joint Statement Regarding Trial Management Issues, at 8–11, 18.)

For some time as the Court has met with the parties regarding trial management, Plaintiff's position on this issue was unclear. For example, Plaintiff has simultaneously argued that "Plaintiff bears the ultimate burden of proving that [UPS] violated California law by not paying overtime on a class wide basis to [FTS]" and that "[UPS] must prove the affirmative defense [ of the exemption] on a class-wide basis." These were statements by Plaintiff appearing in the same document, that is, the parties' Joint Statement of Regarding Trial Management Issues. (*Compare* Joint Statement Regarding Trial Management Issues, at 3 & 5, 14 *with id.* at 4, 5.) When the Court asked for clarification during its meetings with counsel, it had the impression that Plaintiff agreed it had the burden of proving class-wide liability.

However, since that time and most recently in its briefing on decertification, Plaintiff has argued that an employer's burden of proof in an individual case also applies in the context of a class action—UPS must show that it properly classified the FTS as exempt on a class-wide basis. (Pl. Opp'n to Decertification, at 9–15.) Moreover, Plaintiff has suggested it would present a prima facie case that UPS classified the FTS as exempt and did not pay overtime, a prima facie case to which UPS was willing to stipulate. Then UPS would have the burden of proving that it properly applied the exemption on a class-wide basis. (*Id.* at 19–20.)

■ The Court finds that Plaintiff has the ultimate burden of proving misclassification at a class action trial. A plaintiff bringing a class action normally has the ultimate burden of proving class-wide liability at trial. *See, e.g., Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Because Plaintiff has brought a class action challenging UPS's exemption of FTS as a policy of misclassification, Plaintiff must be "able to demonstrate pursuant to either scenario that *misclassification was the rule rather than the exception.* ..." *Sav–On Drug Stores, Inc.,* 34 Cal.4th at 330, 17 Cal. Rptr.3d 906, 96 P.3d 194 (emphasis added). Where, as here, Plaintiff has sought the benefit of class treatment, he too must accept its burden. This burden may be met with common proof of misclassification. *See id.*

The Court finds this approach consistent with the rule that an employer has the burden of proving the exemption as an affirmative defense in an individual case. As to any individual, UPS would have the burden of proving the exemption was proper. However, as to a class-wide finding of misclassification which is the result Plaintiff seeks here, Plaintiff would have the ultimate burden of showing misclassification on a class-wide basis. This does not mean to succeed at trial, or to otherwise maintain a class action, that Plaintiff is required to show that all or substantially all FTS were misclassified. Rath-

---

**4.** Although Rule 23 governs certification of a state law class action in federal court, and the California Supreme Court in *Sav–On* was asked whether class certification was appropriate under California class action requirements, the Court and the parties here have considered *Sav–On* persuasive authority with respect to class actions challenging misclassification of employees as exempt under California wage-and-hour law.

er, Plaintiff must show that it is more likely than not that UPS's exemption as applied to FTS was a policy or practice of misclassification. In any event, a plaintiff must provide common evidence of misclassification to maintain class certification and proceed with a class action trial. *See Sav–On Drug Stores, Inc.,* 34 Cal.4th at 330–31, 17 Cal. Rptr.3d 906, 96 P.3d 194.

### C. *Predominance*

■ Here, the decertification inquiry focuses on whether the Rule 23(a) commonality and Rule 23(b)(3) predominance requirements have been met.[5] At a broad level of generality, the commonality requirement remains satisfied because there is the common question whether the FTS were properly classified as exempt employees. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir.1964) (commonality requires only that class members be similarly situated in sharing common questions of law or fact). Although the Court questions the satisfaction of commonality, the Court addresses these concerns in its predominance inquiry and will not further consider the element of commonality.

■ The predominance requirement demands a rigorous inquiry that "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). To satisfy this requirement, it is not enough simply that common questions of law or fact exist; predominance is a comparative concept that calls for measuring the relative balance of common issues to individual ones. *See id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir.2001) (citing *Valentino v. Carter–Wallace Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996)).

### 1. *The Parties' Evidence*[6]

### a. *Plaintiff*

Plaintiff argues that each type of FTS—Pre–Load, On–Road, and Hub—perform similar duties across California, that UPS classifies the FTS as exempt based their job titles, and that UPS maintains a uniform classification policy. Plaintiff concludes that commonality, as well as predominance of common issues, is satisfied and that this case should proceed as a class action.

At the time of summary judgment, Plaintiff had submitted Plaintiff's declaration along with the declarations of approximately ten FTS employees. The declarations contained similar statements to the effect that those employees did not have authority to hire or fire others, and that they did not exercise independent discretion or judgment in discharging their job duties. (*See, e.g.,* Marlo Decl. in Opp'n UPS's MSJ 11, 13; Flynn Decl. 7; Goudie Decl. 7; Kemp Decl. 7; Rice Decl. 7.) During hearings before the Court, Plaintiff has represented that more declarations have been taken, and also, that a significant number of individuals would testify at trial that they were misclassified.

Other than the individual testimony, Plaintiff relies heavily on a telephone survey conducted by Mary Spain ("Spain survey") of Opinion Resources, Inc. The Spain survey asked 160 FTS various questions regarding performance of their job duties. Plaintiff has submitted samples of UPS's standardized procedures, including the UPS's Job Breakdown Analysis ("JBA") forms describing the FTS's job duties. Plaintiff also has offered UPS's Employee Relations Index ("ERI") survey, where UPS employees may provide anonymous comments while responding to UPS's annual employee survey, although it is unclear to what extent Plaintiff still relies on the ERI comments since this evidence was not discussed in response to the Court's inquiries at a recent hearing. (*See* Tr. Status

---

**5.** There is no serious dispute that the other Rule 23(a) requirements are satisfied.

**6.** The Court extensively described the parties' evidence in its prior Order on summary judg-

ment. (Order, 10–16.) The Court, therefore, offers a brief review as it pertains to decertification.

Conf. Re: Joint Statement of Trial Management Issues, March 28, 2008.)

#### b. *UPS*

UPS contends that a standard policy alone does not support class treatment in this context, where the exemption test involves an individualized inquiry regarding a particular FTS's exercise of discretion and judgment and how a particular FTS spends their time, and determinations will vary based upon a number of circumstances. UPS further contends that Plaintiff lacks common evidence representative of a class of FTS employees; at best, UPS argues, Plaintiff is able to show that some FTS are improperly exempt, while others are properly exempt. UPS concludes that Plaintiff has not come forward with class-wide evidence, which counsels against maintenance of the class action.

UPS has submitted declarations and depositions of FTS and managers that, contrary to Plaintiff's declarations, maintain FTS do in fact exercise independent discretion and judgment, are primarily engaged in exempt work, and otherwise satisfy the elements for the overtime exemption. UPS would call a number of the FTS and managers as witnesses at trial. UPS has also provided several additional sources of evidence, including an expert Job Activity Analysis to identify employees' duties and analyze the nature of those duties, a field survey interviewing employees, a time-motion study recording the job activities of FTS, an expert analysis of the amount of time that FTS spent on particular activities, and quality performance reviews as evidence of UPS's expectations regarding work performance.

#### 2. *Analysis*

■ The existence of a uniform policy classifying the FTS as exempt does not necessarily establish that the policy was misclassification. It is possible to have a classification policy that properly classifies some employees as exempt and improperly classifies others as exempt. *See, e.g., Dunbar,* 141 Cal.App.4th at 1427, 47 Cal.Rptr.3d 83. An exemption policy is different from a facially unconstitutional policy of discrimination, for example, in that something more

must be shown to establish that the policy was wrongful. In other words, a class-wide determination of misclassification generally cannot be proved from the existence of an exemption policy alone.

■ To show that an exemption policy resulted in widespread misclassification, there has to be some common proof that allows a fact-finder to make a class-wide determination. *Sav–On,* 34 Cal.4th at 329–330, 17 Cal.Rptr.3d 906, 96 P.3d 194. In the *Sav–On* decision, the California Supreme Court explained that class certification should be supported by "substantial evidence" of misclassification, *id.* at 329, 17 Cal. Rptr.3d 906, 96 P.3d 194, referring to a plaintiff's "common proof" or "common evidence," *id.* at 330 n. 4, 336, 17 Cal.Rptr.3d 906, 96 P.3d 194. The need for common proof recognizes that a plaintiff's evidence should have some common application to class members in order to provide a basis for the jury to find that "misclassification was the rule rather than the exception." *See id.* at 330, 17 Cal.Rptr.3d 906, 96 P.3d 194. Otherwise, there is a risk that without common proof the inquiry will raise individualized issues since that inquiry focuses "first and foremost, [on] how the employee actually spends his or her time." *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 802, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999).

The need for common proof dovetails with the Rule 23 requirements of commonality and predominance. One of the primary goals of the class device is to adjudicate the claims of a large group of similarly situated individuals when it is efficient and manageable to do so. The commonality and predominance requirements are designed to promote the goals of efficiency and judicial economy by focusing on whether a class action makes sense based upon the balance of common and individual issues. The presence of some individualized issues does not preclude class treatment. However, when individualized issues or determinations become central to a case, the class action no longer advances the efficiency and economy for which it was intended.

One way this can happen is when a plaintiff brings a claim on a class-wide basis that raises individualized issues, but fails to provide common proof that would have allowed a jury to determine those issues on a class-wide basis. This is Plaintiff's failure in this case—Plaintiff has not provided common proof to support a class-wide judgment as to liability. In the absence of common proof, the jury may have sufficient evidence to make judgments as to particular individuals, but lacks a basis to extrapolate from those findings to a class-wide judgment.[7] This is a situation where a class action is neither efficient nor appropriate as the record is limited to evidence of individual claims. As there is no common proof of misclassification in this case, there is no basis to adjudicate class-wide misclassification and the result is that individualized issues predominate over common ones.

At the March 28 hearing, the Court asked that Plaintiff's counsel describe its evidence in this case. Plaintiff's counsel indicated that a main source of the class's evidence was the Spain survey. (Transcript of March 28 Hearing ("Hearing Tr."), at 56.) The Court proceeded to ask Plaintiff's counsel whether the Spain survey was common evidence. Specifically, the Court asked whether Mary Spain would testify that the survey was representative and that it was statistically significant. Plaintiff's counsel said that she would. (Hearing Tr. 50:3–9, 49:5–11.)

However, Plaintiff counsel's statements were incorrect. Contrary to Plaintiff counsel's representations, Mary Spain stated in her deposition that she did not know whether the survey sample was representative, did not do anything to evaluate whether the sample was representative, and was unaware of any guidelines for ensuring that a survey provides representative evidence. (Spain Depo. 122:21–124:8, 132:22–133:3, 36:25–37:16; *see also* Supplement to Defendant UPS's Rebuttal to Representations Made by Plaintiff, April 1, 2008.) In fact, Spain had nothing to do with the survey's design—Plaintiff's counsel wrote the survey ques-

tions. (Spain Depo. 74:25–75:4, 67:16–18, 98:14–20.)

Plaintiff also retained Beth Chung–Herrera, an associate professor of business administration, to review the survey questions for bias. However, she too had no background in survey methodology, no knowledge of the purpose of the survey or facts of this case, and did not have any role in designing the survey. (Chung–Herrera Depo. 26:12–18, 28:21–29:19, 47:25–48:18, 130:21–22, 132:12–133:6; Declaration of Chung–Herrera ¶ 5.) When the Court requested briefing on decertification that specifically identified its concerns with the apparently unrepresentative nature of the Spain survey, the Plaintiff's brief did not discuss—nor even mention—the Spain survey. (*See* Pl.'s Opp'n Decertification.) Here, Spain and Chun–Herrera are unable to testify that the Spain survey is representative.

Moreover, the Spain survey is not "the product of reliable principles and methods." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The parties split the class members into two random samples. This, however, does not establish the reliability of surveys conducted from those samples. Even when one begins with a random sample, one should take measures to assure that nonresponses are random and provide analysis of the reasons of nonresponse. *See* Federal Judicial Ctr., *Reference Manual on Scientific Evidence* 245–46 (2000 ed.); *see also* Federal Judicial Ctr., *Reference Manual on Scientific Evidence* 367–369 (2005–2006 ed.) Here, of the 614–person sample, Spain conducted interviews of 160 individuals. Spain did not analyze the reasons for nonresponse, nor did the survey inquire of the characteristics of the respondents to allow such analysis.

The survey suffers from additional flaws, including the fact that Plaintiff's counsel who has not claimed to be an expert on survey methodology appears to have designed the questions. Even if the Court were to stretch

---

**7.** Common proof could involve simple reference to policies in some cases, but will often require individual employee testimony, expert testimony, generalized surveys, statistical analyses, or some combination of all this evidence. The type of common proof needed will vary based upon the factual circumstances and alleged legal wrong.

the rules of reliability and permit this evidence to be presented to a jury, the Spain survey asked vague and ambiguous questions that largely did not address elements of the exemption and thus has essentially no probative value.[8] Given its methodological and design problems, the Spain survey cannot qualify as common proof of misclassification because it is unrepresentative, unreliable, and has essentially no probative value.

Plaintiff's other evidence does not fill the gap. The ERI comments, while perhaps of some anecdotal value, are not representative of the class. The ERI comments appear in an annual survey conducted by UPS. The ERI comments are discretionary responses to the question "Would you like to type in a comment?" There is no suggestion that UPS follows a reliable methodology in conducting this survey. What's more, the survey is not limited to FTS, and while it is known whether a particular respondent is a "Supervisor," it is unclear whether any particular "Supervisor" respondent is one of the FTS employees in the class or otherwise. The JBA forms, which describe FTS job duties, provide some indication of UPS's expectations, but again, the focus of the exemption test is the employee's actual work activities and these job descriptions simply do not establish what FTS actually do.

Equally important, there is no indication that Plaintiff's evidence addresses the "primarily engaged" element of the exemption, and specifically the week-by-week aspect of the analysis. The regulation offers the following guidance for determination whether an employee is "primarily engaged" in exempt or non-exempt work: "The work actually performed by the employee *during the course of the workweek* must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." 8 C.C.R. § 11070(1)(A)(1) (emphasis added). In California, an employee is "primarily engaged" in

exempt work if more than one-half that employee's work-time in a workweek is devoted to exempt activities. Cal. Lab.Code § 515(e). The Court does not suggest that a showing of the amount of time each individual spends on exempt versus nonexempt work is necessarily required to maintain a class action. A plaintiff could present common proof on this issue. *See Sav–On*, 34 Cal.4th at 336–37, 17 Cal.Rptr.3d 906, 96 P.3d 194. Here, Plaintiff has no common proof to show whether FTS were engaged in exempt or nonexempt work, and also has not presented a plan for how to proceed with this issue at trial.

Plaintiff's evidence at trial primarily would be individual FTS's testimony. To counter this testimony, UPS would offer the testimony of managers to discuss the job duties of Plaintiff's witnesses and testimony from FTS employees suggesting that they are exempt. The exempt/non-exempt inquiry focuses on what an employee actually does. The declarations and deposition testimony of FTS submitted by the parties suggest variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases. Without more than this individual testimony, the Court cannot conceive how the overtime exemption will be presented to the jury as a common issue for class-wide adjudication, as opposed to a number of individualized inquiries. There is a significant risk that the trial would become an unmanageable set of mini-trials on the particular individuals presented as witnesses.

Plaintiff's evidence is essentially individual testimony and an exemption policy. Under the circumstances in this case, where Plaintiff alleges that 1200 FTS have been misclassified as exempt employees, Plaintiff had to provide common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative. Plaintiff has not come forward with common proof sufficient to allow a fact-finder to make a class-wide judgment as to the FTS. Moreover, none of this evidence addresses the

---

8. The Court discussed the flaws with the Spain survey's questions at length in its prior Order on Summary Judgment. (Order, at 31–32.) The Court need not recount those problems here be-

cause the focus in considering maintenance of the class is whether the evidence is representative.

"primarily engaged" prong of the exemption. Because Plaintiff lacks common evidence, the Court has no confidence that the jury will be able to do anything but speculate as to a class-wide determination. Accordingly, under the particular facts of this case, the Court finds that individual issues predominate over common ones. As a result, the Court decertifies the class.

The result in this case could have been different. A plaintiff that offers reliable common evidence should not face decertification. Here, Plaintiff has not done so. For the past several months, the Court inquired of Plaintiff's counsel how they intended to try this case. On several occasions, the Court received unsatisfactory answers. Some of those inquiries have been recounted here, including Plaintiff counsel's statements regarding the Spain survey. As an additional example, Plaintiff stated at the March 28 hearing that after proving class-wide liability, there would be a damages phase where UPS would "have the opportunity to ... knock out whoever they believe [should not properly] receive the award." [9] (Tr. 24:16–23.) The Court questioned the need for the class if liability would have to be tried a second time at the damages phase, and although Plaintiff's counsel retracted this position, this exchange illustrates that Plaintiff's counsel did not conceptualize the trial management of common issues through the class mechanism. Moreover, Plaintiff did not request subclasses, even though there were three FTS positions, until the Court raised this issue after remand.[10] There also was never a request to consider whether it would be appropriate to determine exempt versus nonexempt tasks through summary judgment. The Court has broad discretion to manage class action practice, but this does not relieve a party of its responsibilities to articulate a clear trial plan when requested. *Cf.* Fed. R. Civ. Pro. 16(a).

It is possible through development of reliable common proof and clearer vision for how to try this case that Plaintiff could have avoided this situation. However, the Court must review the fairness and efficiency of class treatment based on the record before it. Here, there is a lack of common proof to support a class-wide judgment. The Court concludes that individualized issues will predominate if this case were to proceed to trial.

### D. *Superiority*

■ In addition to the predominance requirement, a class action must be superior to other methods of adjudicating the controversy. *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1235 (9th Cir.1996). The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. See, e.g., *Abed v. A.H. Robins Co.,* 693 F.2d 847, 856 (9th Cir.1982).

■ As the Court has found that individual issues predominate in this case, a class action is not the superior method for litigating this matter. Decertification in no way means that FTS who have been improperly classified as exempt cannot pursue their legitimate claims for overtime pay. However, it does mean that there is not a predominance of common issues to warrant allowing the FTS's claims to go forward as part of a class action.

### E. *Summary*

The Court does not take lightly its responsibility to ensure that the class action device serve to protect important rights through collective enforcement. Nor does the Court consider its decision here to provide any authority to support denying class certification generally. The Court agrees that the burden at the class certification stage is slight, and that a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied. This makes

---

**9.** Plaintiff also made this representation in a brief prior to that hearing. (Plaintiff's Proposed Trial Management Plan, March 27, 2008, at 5.)

**10.** Although the Court has discretion to divide the class into subclasses and considered doing so, the Court determined that it was too late to take this action. The discovery in this case proceeded through the summary judgment stage with an undifferentiated class of all three FTS positions. As a result, the Court did not consider it appropriate to divide the class into subclasses when it was unclear that the evidence would be responsive.

sense at an early stage in the litigation. At a later stage, however, a court will sometimes need to reevaluate the certification decision.

As a general rule, this Court does not consider decertification necessary. Normally, a plaintiff will develop common evidence and a trial management plan with an eye toward maintaining the requirements for a class action. This is the unusual case where, in spite of earlier indications that class treatment was feasible, the subsequent discovery, motion practice, and trial preparations has revealed that the requirement of predominate common issues is not satisfied. If there is any lesson to take from the circumstances here, it is that a plaintiff in a class action challenging an employer's exemption policy must think through how to enable a factfinder to make a decision as to class-wide misclassification. Common proof of some kind is necessary to support this class-wide determination. Plaintiff has not provided that proof here. As a result, the predominance and superiority requirements are not met.

## IV. CONCLUSION

For the foregoing reasons, the Court DE-CERTIFIES the class. The Court understands that the parties had wanted to brief two contested issues in the event the class was decertified: (1) whether the statute of limitations should be tolled for any length of time during the appeal; and (2) whether counsel for UPS may contact class members following decertification, including during the pendency of any appeal. The Court orders the parties to enter a stipulation regarding a briefing schedule on these issues. The statute of limitations shall continue to be tolled and the prohibition on contacts with class members shall remain in effect until the Court resolves these issues.

Plaintiff also requested, in the event of decertification, that the Court stay the trial of Marlo's individual claims and certify any decertification decision for an interlocutory appeal. The Court considers the subject of this Order to "involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation...." *See* 28 U.S.C. § 1292(b); *McElmurry v. U.S. Bank Natal Ass'n*, 495 F.3d 1136, 1139–40 n. 3 (9th Cir.2007). The Court will wait to stay Marlo's claims in order to consider the parties' briefing on the tolling and class member contact issues mentioned above.

IT IS SO ORDERED.