[No. A105832. First Dist., Div. Two. July 21, 2005.]

JOHN CONLEY et al., Plaintiffs and Appellants, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.C.

Counsel

Siegel & LeWitter, Jonathan H. Siegel, Jody I. LeWitter, Daria Dimitroff and Jonathan D. Yank for Plaintiffs and Appellants.

Thelen, Reid & Priest, Thomas E. Hill, Thomas M. McInerney and Seth L. Neulight for Defendant and Respondent.

Opinion

**RUVOLO, J.**—Respondent Pacific Gas and Electric Company (PG&E) classifies some of its employees as exempt from the federal and California laws requiring overtime pay. Appellants are PG&E employees who dispute PG&E's classification of them as exempt. Appellants seek to pursue claims for unpaid overtime on behalf of several classes of PG&E employees who they assert have been improperly treated as exempt: a salary basis class, consisting of all PG&E employees who have been classified as exempt, and various job duties classes, each consisting of employees who hold jobs in specific categories. The trial court denied appellants' motion for class certification in its entirety, and this appeal ensued.

As to the proposed salary basis class, appellants allege that PG&E's policy of charging its exempt employees' vacation leave banks for partial-day absences from work renders all of those employees nonexempt as a matter of California law. Because the trial court rejected this argument, it concluded that the class members did not share a plausible cause of action, and accordingly ruled that certification of the proposed class would be inappropriate.

Class certification normally should not be denied on the basis of a perceived lack of merit in the claims asserted on behalf of the proposed class. In this case, however, appellants have invited us to address the merits of their claim. Moreover, in the present posture of this case, the exemption issue presents a pure question of law, which is one of first impression under California law. We therefore deem it appropriate to resolve it on this appeal. Accordingly, in the published portion of this opinion, we conclude that nothing in California law precludes an employer from following the established federal policy permitting employers to deduct from exempt employees' vacation leave, when available, on account of partial-day absences from work. We therefore affirm the order denying certification of the salary basis subclass.

As to the job duties classes, appellants allege that the nature of the duties performed by employees in these classes does not qualify them as exempt. The trial court denied certification of these classes on two grounds: first, that due to individual differences in the actual tasks performed by each specific member of the proposed classes, common issues did not predominate; and second, that due to the availability of alternative relief through administrative proceedings, a class action would not be a superior method of adjudicating the claims of the proposed class members. Appellants argue that developments in the case law since the trial court issued its ruling, particularly *Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-on Drugs*), have called into question the key premises of the trial court's legal analysis. For the reasons explained in the unpublished portion of this opinion, we agree, and accordingly remand in order to give the trial court an opportunity to reconsider its ruling as to the job duties classes in light of more recent case law.

## I.

### FACTS AND PROCEDURAL BACKGROUND

PG&E is a utility company that supplies energy, in the form of electricity and natural gas, to customers in many areas of Northern California. Appellants are PG&E employees who have been classified by PG&E as exempt from the requirements of the federal and California statutes requiring overtime pay. Two of them are senior new business representatives (SNBR's), one is an electric distribution engineer (EDE), and one is a gas distribution engineer (GDE).

Appellants filed this action on March 23, 2000, alleging that they and the other members of the proposed classes do not meet the legal requirements for exempt status, and are therefore entitled to overtime pay. On August 8, 2003, appellants moved for certification of a salary basis class, consisting of all exempt PG&E employees, and two job duties classes, one (the SNBR/IPE class) consisting of about 97 SNBR's and 41 industrial power engineers (IPE's[1]), and another (the EGE/GDE class) consisting of about 66 EDE's and 15 GDE's.

---

[1] None of the named plaintiffs is an IPE. We leave it to the trial court on remand to assess the significance of this fact, if any, for appellants' class certification motion.

The parties conducted discovery on the class certification issues and on the issues presented by a motion for summary adjudication filed by PG&E, and submitted extensive evidence and briefing. On January 5, 2004, the trial court filed a 21-page written order denying both appellants' class certification motion, in its entirety, and PG&E's summary adjudication motion. Appellants then timely filed this appeal from the denial of their class certification motion.[2]

## II.

### DISCUSSION

### A.

### Standard of Review

■ The law governing a trial court's decision on a motion for class certification, and the standards applicable to our review of such a decision, were recently summarized by our Supreme Court as follows: "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citations.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.] [¶] The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.] A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] . . .

■ "We review the trial court's ruling [on a motion for class certification] for abuse of discretion. 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial

---

[2] An order denying a class certification motion in its entirety is appealable. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [74 Cal.Rptr. 515, 629 P.2d 23].)

court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation]. . . . "Any valid pertinent reason stated will be sufficient to uphold the order." ' [Citations.]" [¶] . . . [¶]

■ "As the focus in a certification dispute is on what type of questions— common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.] 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' [Citations.]" (*Sav-on Drugs, supra,* 34 Cal.4th at pp. 326–327.)

### B.

### Salary Basis Class

■ As PG&E acknowledges, its employees are entitled to overtime pay under the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. §§ 201–219) and under the California overtime statutes (Lab. Code, §§ 510, 515) unless PG&E affirmatively establishes that the employees in question qualify for an exemption to that requirement under both federal and state law. (See generally *Sav-on Drugs, supra,* 34 Cal.4th at pp. 324–325; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794–795 [85 Cal.Rptr.2d 844, 978 P.2d 2].) In the present case, the parties agree that in order to justify its treatment of the members of the proposed plaintiff classes as exempt, PG&E would be required to demonstrate that those employees meet both a salary basis test and a job duties test.[3] (See generally *Barner v. City of Novato* (9th Cir. 1994) 17 F.3d 1256, 1259–1260.)

Under the federal regulations implementing the FLSA,[4] "[a]n employee will be considered to be paid on a 'salary basis' . . . if the employee regularly

---

[3] Appellants' complaint does not allege that any PG&E employees have been misclassified as exempt under the job duties test other than those in the proposed job duties classes. We therefore defer our discussion of the job duties test to the parts of our opinion addressing certification of appellants' proposed job duties classes.

[4] We note that on April 23, 2004, after the trial court issued its order denying class certification, the applicable federal regulations were revised and renumbered, effective August 23, 2004. (29 C.F.R. §§ 541.0–541.710; 69 Fed.Reg. 22122, 22260–22274 (Apr. 23, 2004).) Neither party has argued that the amendments affect the issues in this case with respect to the proposed salary basis class. We leave it to the trial court on remand to consider their effect, if any, on the proposed job duties classes.

receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." (29 C.F.R. § 541.602(a) (2004).)[5] The regulations also provide that "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." (29 C.F.R. § 541.602(b)(1) (2004).)

It is undisputed that the combined effect of these provisions of federal law is to preclude employers from docking the pay of an employee for an absence of less than a day (a partial-day absence[6]). If they do, then the involved employees do not meet the salary basis test, and are nonexempt for purposes of overtime pay. When this litigation was first filed, and in their opposition to PG&E's motion for summary adjudication, appellants contended that PG&E had a practice of doing just that. Appellants were unable to establish a factual basis for this claim through discovery, however, and they have abandoned it on appeal.

Appellants have raised another issue, however. While PG&E does not deduct from exempt employees' *pay* for partial-day absences, it does acknowledge that it has an express policy (PG&E's vacation leave policy) of making deductions from exempt employees' *vacation leave banks* for partial-day absences. Appellants contend that PG&E's vacation leave policy constitutes a reduction in the amount of compensation they receive based on the quantity of work they perform. Thus, they aver, none of PG&E's employees meets the salary basis test, and therefore none of them are exempt. Based on this legal argument, appellants sought to certify a salary basis class consisting of all PG&E employees classified as exempt.

The trial court ruled that there was "an overriding common factual and legal question presented by [the overtime claims of the proposed] salary basis class," but nonetheless denied certification on the basis of *American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291 [44 Cal.Rptr.2d

---

[5] Employees must also be paid a specified minimum salary in order to qualify as exempt. (See generally *Barner v. City of Novato, supra,* 17 F.3d at pp. 1259–1260.) It is not disputed that all the members of the proposed salary class in the present case receive at least the minimum salary required for exempt status.

[6] The term "partial-day absence" is overbroad in the context of this case, because appellants do not contend, and the record does not indicate, that PG&E imposes either pay or leave bank deductions on exempt employees for absences lasting less than four hours in a single work day. We use the term only for convenience, and do not intend it to include an absence of less than four hours.

526] (*American Suzuki*), which held that "[f]or a class to be considered ascertainable [for the purpose of class certification], its members must have a plausible cause of action against the defendant. [Citation.]" (*Id.* at pp. 1294–1295.) The trial court's order made clear that the holding in *American Suzuki* "requiring a viable cause of action is the *only* basis for denying class certification of the salary basis class." (Italics added.)

■ Appellants argue in passing that the trial court erred in relying on *American Suzuki*, *supra*, 37 Cal.App.4th 1291, because it was disapproved by our Supreme Court in *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 442–443 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*). They nonetheless ask this court to address the merits of the claim they have asserted on behalf of the proposed salary basis class. We agree that the holding in *American Suzuki* on which the trial court relied has been placed in serious question, if not overruled, by *Linder's* holding that class certification generally should not be "conditioned upon a showing that class claims for relief are likely to prevail." (*Linder*, *supra*, 23 Cal.4th at p. 443.) Nonetheless, we address the merits of appellants' claim both because the parties have requested that we do so for their further guidance, and because the issue raised is one of continuing importance in wage and hour litigation in this state. We are also influenced by the *Linder* court's observation that there is "nothing to prevent a court from considering the legal sufficiency of claims when ruling on certification where both sides jointly request such action." (*Ibid.*)

In addition, the Supreme Court in *Linder* expressly declined to "foreclose the possibility that, in the exceptional case where the defense has no other reasonable pretrial means to challenge the merits of a claim to be asserted by a proposed class, the trial court may, after giving the parties notice and an opportunity to brief the merits question, refuse class certification because the claim lacks merit as a matter of law." (*Linder*, *supra*, 23 Cal.4th at p. 443.) This case appears to be an "exceptional case" of the type referred to in *Linder.* PG&E attempted to use a summary adjudication motion to raise its defense to the salary basis claim, but was unable for purely procedural reasons to secure an adjudication of that issue prior to the class certification ruling.[7] As required by *Linder*, the trial court permitted discovery and ample briefing on the merits of the issue prior to adjudicating it in connection with the class certification motion.

---

[7] The court denied PG&E's motion for summary adjudication *only* on the ground that it failed to meet the statutory requirement that a "motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f).)

Accordingly, we turn to the question whether appellants have a viable legal theory to support the claims of their proposed salary basis class. Appellants' argument on that point relies primarily on a 1982 decision by the California Supreme Court, *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 [183 Cal.Rptr. 846, 647 P.2d 122] (*Suastez*). Because *Suastez* is so central to appellants' position, we will describe its rationale and holding in some detail.

*Suastez, supra,* 31 Cal.3d 774, involved the interpretation of Labor Code section 227.3 (section 227.3), which provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages . . ." and that "an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination." The opinion in *Suastez* expressly noted that "[t]he only issue raised by this appeal is when vacation time becomes 'vested' under section 227.3." (31 Cal.3d at p. 778.)

The employer in *Suastez,* Plastic Dress-Up, had declined to pay any vacation pay to an employee who was terminated prior to the anniversary date of his employment. Plastic Dress-Up contended that this action did not violate section 227.3 because under its vacation policy, its employees' right to vacation pay did not vest until the end of the year in which the vacation was accrued, or in other words, that completing a year of service was a condition precedent to the vesting of the right to vacation pay. (*Suastez, supra,* 31 Cal.3d at pp. 778, 781–782.)

In rejecting this argument, our Supreme Court began with the principle that "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.]" (*Suastez, supra,* 31 Cal.3d at p. 779.) Analogizing vacation pay to pension benefits, the court held that "[t]he right to some share of vacation pay vests, like pension rights, on acceptance of employment. Nonperformance of a condition subsequent, such as Plastic Dress-Up's requirement that employees remain until their anniversary, can, at most, result in a forfeiture of the right to a vacation; it cannot prevent that right from vesting." (*Id.* at p. 781.) The court went on to hold, however, that a forfeiture of the right to vacation upon an employee's termination was barred by the clear mandate of section 227.3. (*Id.* at pp. 781–782.)

As already noted, PG&E concedes that compliance with the federal salary basis test requires PG&E to allow exempt employees who have exhausted their vacation leave to take partial-day absences without a corresponding loss in pay. But appellants argue by extension that employers who require their employees who have *not* exhausted their vacation leave to apply that leave to partial-day absences violate the employees' vested right to vacation pay under *Suastez*. This argument reads the holding of *Suastez* far too broadly.

Even if we construe *Suastez* to require pro rata vesting and preclude forfeitures of earned vacation pay under circumstances other than termination, we still would not accept appellants' contention that PG&E's vacation leave policy violates the principle announced in that case. Although the federal salary basis test may require PG&E to give exempt employees *additional* time off for partial-day absences after they exhaust their vacation leave banks, under PG&E's vacation leave policy, PG&E's exempt employees do in fact *receive* all of the paid time off they have earned—they must simply use that accrued vacation time to make up for partial-day absences. In other words, because the deductions made from vacation leave banks of exempt employees represent days on which those employees have, in fact, taken at least four hours off work, PG&E's vacation leave policy neither imposes a forfeiture nor operates to prevent vacation pay from vesting as it is earned. All it does do is regulate the *timing* of exempt employees' use of their vacation time, by requiring them to use it when they want or need to be absent from work for four or more hours in a single day.

This is entirely consistent with *Suastez*, in which the Supreme Court expressly noted that "[s]ection 227.3 . . . does not purport to limit an employer's right to control the *scheduling* of its employees' vacations. [Citations.]" (*Suastez, supra,* 31 Cal.3d at pp. 778–779, fn. 7, italics added.) Clearly, therefore, *Suastez* does not preclude PG&E from requiring its exempt employees to use their vacation leave, if available, when they want or need to take a partial-day absence.

■ Appellants argue that their interpretation of *Suastez* has been adopted by the Department of Labor Standards Enforcement (DLSE) in several interpretive advice letters. Advice letters of this type are properly considered by the courts, and may be entitled to some weight, but they do not have the force of law and are not controlling on us. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 815 [105 Cal.Rptr.2d 59]; see *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296] [DLSE advice letters to private parties are not regulations, and

thus are not subject to statutes governing agency rulemaking, but are not binding on courts when reviewing agency proceedings]; see generally *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10–15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Thus, to the extent that the DLSE advice letters support appellants' interpretation of *Suastez*, we respectfully disagree with their analysis for the reasons we have already explained.[8]

In sum, we find nothing in California law that precludes employers from following the federal rule that permits them to require the use of vacation leave for partial-day absences without causing otherwise exempt employees to become nonexempt under the salary basis test. (See *Webster v. Public School Employees of Washington* (9th Cir. 2001) 247 F.3d 910, 917–918[9]; *Barner v. City of Novato, supra,* 17 F.3d at pp. 1261–1263.) Accordingly, we agree with the trial court that the proposed salary basis class does not share a plausible cause of action.

## C.

### Job Duties Classes[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8] Because we disagree with the DLSE advice letters on their merits, we need not decide what weight, if any, should be given to an internal DLSE memorandum dated May 31, 2005, cited to us by PG&E's counsel at oral argument, which withdraws one of the DLSE advice letters on which appellants rely.

[9] In *Webster v. Public School Employees of Washington,* the Ninth Circuit acknowledged the possibility that Washington state law might be more protective of employees than the FLSA on this question, and remanded the case to the district court for further proceedings on that issue. (*Webster v. Public School Employees of Washington, supra,* 247 F.3d at pp. 918–920.) On remand, the district court certified the question to the Washington Supreme Court. That court held that "in the absence of docking from an employee's pay, requiring 'make up' through additional hours or *deductions from leave time* does *not* per se violate the 'salary basis' test under [the applicable Washington state statute]." (*Webster v. Pub. Sch. Employees* (2003) 148 Wn.2d 383 [60 P.3d 1183, 1191], italics added.) The court went on to state, however, that the practice of deducting from leave time is "a factor to consider" in determining whether an employee is exempt as a bona fide executive, administrative, or professional employee. (*Ibid.*) As the court explained, this is because under Washington law, courts are permitted to consider "the entire context of the employment relationship" in determining whether an employee is exempt. (*Id.* at p. 1192.) This is not the test under California law, and appellants have not argued otherwise.

[*]See footnote, *ante,* page 260.

## III.

### DISPOSITION

We affirm the trial court's order denying class certification with respect to the proposed salary basis class. With regard to the proposed job duties classes, we remand for further proceedings consistent with this opinion. In the interests of justice, appellants and respondent shall each bear their own costs on this appeal.

Kline, P. J., and Haerle, J., concurred.