Filed 7/21/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LORI RHEA,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>GENERAL ATOMICS,<br><br>　　Defendant and Respondent. | D064517<br><br><br><br>(Super. Ct. No. 37-2012-00090447-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard

E. L. Strauss, Judge.  Affirmed.

Cohelan Khoury & Singer, Michael D. Singer, J. Jason Hill; Locker Folberg,

Miles E. Locker; Stephen Danz & Associates and Stephen Danz for Plaintiff and

Appellant.

Paul Hastings, Paul W. Cane, Jr., Mary C. Dollarhide and Haley M. Morrison for

Defendant and Respondent.

This appeals presents a challenge to General Atomics' employment practice of

requiring exempt employees to use their annual leave hours when they are absent from

work for portions of a day.  Although *Conley v. Pacific Gas & Electric Co.* (2005) 131 Cal.App.4th 260, 263 (*Conley*) established that California law does not prohibit an employer "from following the established federal policy permitting employers to deduct from exempt employees' vacation leave, when available, on account of partial-day absences," appellant Lori Rhea contends that *Conley* was wrongly decided, or in the alternative, that even under *Conley*, General Atomics is not permitted to deduct from an exempt employee's leave bank when the employee is absent for *less* than four hours.

We conclude that Rhea's contentions are without merit, and accordingly we affirm the trial court's judgment in favor of General Atomics.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.     *General Atomics' Annual Leave Policies for Exempt Employees*

Rhea is employed at General Atomics in a salaried position that qualifies her as an exempt employee for the purposes of overtime pay under the federal and California wage and hour laws.  (Lab. Code, § 515, subd. (a); 28 U.S.C. §§ 201-219.)[1]

Exempt employees at General Atomics are paid a salary and accrue comprehensive annual leave (Annual Leave) which can be used by employees to take

_____

[1]     This case involves a legal dispute, not a factual one.  Accordingly, the parties agreed to a joint statement of undisputed stipulated facts, which they submitted to the trial court in connection with cross-motions for summary judgment on the legal permissibility of General Atomics' policy of requiring exempt employees to use annual vacation leave for absences of less than one day.  Our recitation of the facts is based on that stipulation.

2

paid time off for any reason, including vacation, sickness, medical appointments, family obligations and leisure pursuits. An exempt employee's salary at General Atomics does not fluctuate based on the number of hours worked by the employee during a pay period, and General Atomics does not pay overtime to exempt employees.

The amount of Annual Leave accrued by an employee depends on the employee's length of service at the company, ranging from 15 days per year for an employee with less than one year service, to 32 days per year for an employee with 19 years or more of service. General Atomics specifies a maximum amount of Annual Leave balance that an employee may carry over to the next year, depending on length of service. When an exempt employee reaches the maximum accrual amount during a calendar year, the employee continues to accrue Annual Leave past the maximum through the end of the calendar year, but any Annual Leave hours in excess of the maximum at the end of the year are automatically cashed out and included in the employee's January paycheck.

General Atomics requires that exempt employees use their Annual Leave hours when they are absent from work for partial days or full days. Over the course of the time period relevant to this lawsuit (January 2008 to the present),[2] General Atomics had two different policies about the length of time that an employee could be absent during a day before a deduction from Annual Leave was required. Between January 3, 2009, and February 4, 2011, employees were required to use Annual Leave only if a partial-day

_____

[2]    We note that Rhea's complaint covers a class period from January 2008 to the present, but her appellate briefing states that she is limiting her challenge to General Atomics' policy from February 2011 to the present.

absence was four hours or more.  At all other times, General Atomics' policy has been to deduct from Annual Leave for partial-day absences of *any* length.

Although General Atomics has no written policy directing employees to record partial-day absences in any particular minimum increment, it is possible for an employee to record a partial-day absence in small increments, with some employees recording absences of as little as one-tenth of an hour.  However, the majority of employees record partial-day absences in greater increments, with 98.8 percent of exempt employees in California from February 3, 2010, to August 20, 2012, recording partial-day absences of an hour or more.[3]

Whether absent for a full or partial day, employees continue to receive their full salary and continue to accrue Annual Leave during the period of absence.  Further, even if absent for a full or partial day during a particular week, an employee is not required to use Annual Leave for an absence in any week in which the employee works a total of more than 40 hours.[4]

---

[3]     Because General Atomics is a government contractor, it requires all exempt employees to record hours worked in a timekeeping system.

[4]     Rhea ignores this policy throughout her briefing, contending that exempt employees are not treated fairly because General Atomics purportedly "requir[es] the employee to pay for lost intra-day productivity" by using Annual Leave time for partial-day absences even when General Atomics "demands work that far exceeds a typical 8-hour day or 40-hour workweek."  That characterization is not accurate, as General Atomics does *not* require deductions from Annual Leave when an exempt employee has worked more than 40 hours in a week.

General Atomics' policy allows an exempt employee to use Annual Leave hours that have not yet accrued, up to 7.9 hours, with the deficit being made up by a deduction of Annual Leave hours when they accrue. When an exempt employee terminates employment at General Atomics with a negative Annual Leave balance, General Atomics does *not* reduce the amount of salary in the employee's final paycheck to offset the negative balance.

B.      *The Litigation in the Trial Court*

Rhea filed this lawsuit as a proposed class action on January 10, 2012, on behalf of a proposed class of General Atomics' exempt employees in California subject to Annual Leave deductions for partial-day absences of less than four hours in the four years prior to filing the lawsuit. The complaint alleged causes of action for (1) illegal wage deduction and forfeiture of vested vacation wages in violation of Labor Code section 221 et seq.; (2) failure to pay overtime wages at the required overtime rate in violation of Labor Code sections 510 and 1194; (3) failure to comply with itemized employee wage statement provisions in violation of Labor Code section 226, subdivision (a); and (4) violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

General Atomics answered the complaint, and the parties agreed to file cross-motions for summary judgment and a stipulation of undisputed facts to obtain a ruling from the trial court on the legality of General Atomics' practice of requiring exempt employees to use Annual Leave for partial-day absences.

After considering the parties' summary judgment briefing and argument, the trial court ruled in favor of General Atomics, concluding that California law did not prohibit

5

General Atomics' policy of requiring exempt employees to use Annual Leave for partial-day absences of any length. Rhea appeals from the judgment.

## II

## DISCUSSION

A.     *Legal Standards*

Both because we are reviewing a ruling on motions for summary judgment, and because the issue presented to us is purely one of law on undisputed facts, we apply a de novo standard of review. (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813 [on " 'appeal after a motion for summary judgment has been granted, we review the record de novo' "]; *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178 ["We apply a de novo standard of review where, as here, our task consists of applying a statute to underlying facts that are not in dispute."].)

The issue presented requires us to interpret provisions of the Labor Code. "We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose. [Citation.] '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027 (*Brinker*).) More specifically, "under California law, exemptions from statutory mandatory overtime provisions are narrowly construed." (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 (*Ramirez*).)

6

B.      *Applicable Law*

Both the federal Fair Labor Standards Act (FLSA) (29 U.S.C. §§ 201-219) and

California law require that an employer pay overtime wages to employees unless those

employees are classified as exempt employees under the applicable law. (Lab. Code,

§§ 510, 515; 29 U.S.C. §§ 207, 213.) Although California law on the issue is patterned to

some extent on federal law, the FLSA "explicitly permits greater employee protection

under state law," allowing states to regulate overtime wages. (*Ramirez*, *supra*, 20 Cal.4th

at p. 795.) "The rule is that state law requirements for exemption from overtime pay

must be at least as protective of the employee as the corresponding federal standards."

(*Negri v. Koning & Associates* (2013) 216 Cal.App.4th 392, 398 (*Negri*), citing *Ramirez*,

at p. 795.)

Both California and federal law provide that employees are exempt only if they

(1) perform certain types of work and (2) are paid on a salary basis. (Lab. Code, § 515;

29 U.S.C. § 213; 29 C.F.R. § 541.600 (2013).)[5] Here, there is no dispute that under both

federal and California law Rhea performs the type of work that qualifies her as an exempt

employee. The dispute is whether General Atomics is paying Rhea and its other exempt

employees on a salary basis *under California law* even though it requires them to use

Annual Leave for partial-day absences.

---

[5]     Under federal law, "[t]o qualify as an exempt executive, administrative or
professional employee . . . , an employee must be compensated on a salary basis" not
below a specified rate. (29 C.F.R. § 541.600(a) (2013).) Under California law an exempt
employee must be paid "a monthly salary" not below a specified rate. (Lab. Code, § 515,
subd. (a).)

7

Federal regulations define what it means to be paid on a salary basis.  Subject to certain exceptions, "[a]n employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  (29 C.F.R. § 541.602(a) (2013).)  The main exception applicable here is that salary may be deducted for *full day* absences for personal reasons, sickness or disability.  "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."  (29 C.F.R. § 541.602(b)(1) (2013).)  "Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability."  (29 C.F.R. § 541.602(b)(2) (2013).)

California statutes and regulations contain no corresponding provisions.  However, because California law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard.  (*Negri*, *supra*, 216 Cal.App.4th at p. 398; *Service Employees Internat. Union, Local 250 v. Colcord* (2008)

160 Cal.App.4th 362, 370, fn. 5.)[6] Throughout her argument, Rhea accordingly endorses the wording and structure of the federal salary basis test as relevant to the rules applicable in California, but she contends that certain provisions of California law require that the federal salary basis test be applied more protectively when it is imported into California law.

Premised on the salary basis test as expressed in the federal regulations, it is well established and acknowledged by the parties that under both California and federal law when an exempt employee is absent from work for a *partial* day, an employer is prohibited from deducting *monetary pay*. (*Conley*, *supra*, 131 Cal.App.4th at p. 267; *Barner v. City of Novato* (9th Cir. 1994) 17 F.3d 1256, 1261 (*Barner*); *Martin v. Malcolm Pirnie, Inc.* (2d Cir. 1991) 949 F.2d 611, 615.) This is based on the wording of the federal regulations we have quoted above, authorizing "[d]eductions *from pay*" only for "*full-day* absences." (29 C.F.R. § 541.602(b)(1), (b)(2) (2013), italics added.)

The dispute here is whether, under California law, an employer may set a policy requiring that exempt employees use their *vacation or leave time* — rather than monetary

---

6     To illustrate that state law may impose a standard more protective than the federal salary basis test, Rhea cites Washington case law holding that when deciding whether an employee is exempt from state overtime laws, Washington courts may "consider[] not only the federal 'salary basis' test, but also . . . policies and practices that do not affect base pay" such as deductions from accrued leave time. (*Webster v. Pub. Sch. Employees* (Wash. 2003) 148 Wash.2d 383, 401 [60 P.3d 1183, 1192].) Apart from demonstrating that state law may diverge from the federal salary basis test, Washington's approach is not relevant here because it is based on a different underlying state law.

pay — when they are absent from work for partial days.  We begin by reviewing the federal law on that issue.

Federal courts and the United States Department of Labor take the position that, under federal law, there is no prohibition on an employer's practice of deducting from an employee's vacation or leave time for partial-day absences.  (*McBride v. Peak Wellness Center, Inc.* (10th Cir. 2012) 688 F.3d 698, 705; *Schaefer v. Indiana Michigan Power Company* (6th Cir. 2004) 358 F.3d 394, 400; *Barner*, *supra*, 17 F.3d at pp. 1261-1262; *York v. City of Wichita Falls* (5th Cir. 1991) 944 F.2d 236, 242; U.S. Dept. of Labor, Opn. Letter No. FLSA2009-18 (Jan. 16, 2009) accessed at <http://www.dol.gov/whd/ opinion/FLSA/2009/2009_01_16_18_FLSA.htm> [as of July 15, 2014]; U.S. Dept of Labor, Opn. Letter No. FLSA2005-41 (Oct. 24, 2005) accessed at <http://www.dol.gov/whd/opinion/ FLSA/2005/2005_10_24_41_FLSA.pdf> [as of July 15, 2014].)  The reasoning is that "leave time is not salary."  (*Webster v. Pub. Sch. Employees* (9th Cir. 2001) 247 F.3d 910, 917.)  "While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary."  (*International Assn. of Fire Fighters, Alexandria Local 2141. AFL-CIO v. City of Alexandria* (E.D.Va. 1989) 720 F.Supp. 1230, 1232, affd. 912 F.2d 463 (4th Cir. 1990).)

The only case law addressing the issue under California law is *Conley*, *supra*, 131 Cal.App.4th 260, which concluded that California law requires the same result as federal law.  *Conley* concluded that "nothing in California law . . . precludes employers from following the federal rule that permits them to require the use of vacation leave for

partial-day absences without causing otherwise exempt employees to become nonexempt under the salary basis test." (*Id.* at p. 271.) The California Division of Labor Standards Enforcement (DLSE) expressly follows *Conley*, taking the position in a November 23, 2009 opinion letter that "while it is impermissible to deduct *from a salary* for partial[-]day absences, [an employer] may *deduct from leave time balances* in connection with absences due to vacation or sickness of less than a full day under a bona fide plan providing for such leaves without the employee losing his or her exempt status." (Dept. of Industrial Relations, DLSE, Chief Counsel Robert R. Roginson, Opn. Letter No. 2009.11.23, Deductions for Partial and Full Day Absences of Exempt Employees (Nov. 23, 2009) p. 7 <https://www.dir.ca.gov/dlse/opinions/2009-11-23.pdf > [as of July 15, 2014] (2009 DLSE Opinion Letter).)[7] Although *Conley* specified that the employer's policy in that case required exempt employees to use their vacation leave only for absences of at least four hours (*Conley*, *supra*, at p. 267, fn. 6), the 2009 DLSE Opinion Letter concluded that *Conley* did not intend to establish a limitation under which employers may require deductions from exempt employees' leave balances *only* when absences are *at least* four hours in length. (2009 DLSE Opn. Letter, *supra*, at p. 6.)

Rhea contends that *Conley* and the DLSE wrongly concluded that California law permits employers to require exempt employees to use their vacation or leave time when

---

7    "The DLSE's opinion letters, ' " ' "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." ' " ' " (*Brinker*, *supra*, 53 Cal.4th at p. 1029.)

11

absent for partial days without violating the salary basis test. According to Rhea, *Conley* and the DLSE fail to recognize that "any use of vested vacation to account for any partial-day absence of less than one full day violates the 'salary basis' test under California law due to its unique wage antiforfeiture statutes . . . ." Therefore, the issue before us is whether anything in California law requires that the federal salary basis test be interpreted differently under California law, so that the rule against deducting from "pay" for partial-day absences in the federal regulations is broadened to include a rule against deducting from *vacation or leave time* when those regulations are imported into California law.

C.  *Rhea's Challenge to Conley Is Without Merit, and General Atomics' Policy Is Consistent with California Law*

1.  *The Antiforfeiture Principles of California Law Do Not Apply Here*

Throughout her briefing Rhea repeats different versions of the same basic argument, namely that *Conley* was wrongly decided because it failed to recognize that California law contains unique antiforfeiture provisions that protect vacation pay from forfeiture.

Rhea's argument has three premises: (1) under California law, vacation or annual leave is treated as a type of "wages" or "deferred compensation" earned by an employee; (2) California law prohibits an employer from requiring forfeiture of wages, including accrued vacation or annual leave; and (3) by deducting annual leave for partial-day absences, an employer is impermissibly requiring a forfeiture of wages. Taking these three premises together, Rhea contends that when the federal salary basis test is imported

12

into California's overtime laws, the federal prohibition on making "[d]eductions from pay" for a partial-day absence (29 C.F.R. § 541.602(b)(1), (b)(2) (2013)), must be read to prohibit deductions from *vacation or leave time* for partial-day absences on the ground that vacation pay in California is part of an employee's "wages" or "compensation" and is protected by California's antiforfeiture laws.

The first of Rhea's premises is sound. Our Supreme Court has stated that vacation pay is a type of wages or deferred compensation for services performed that vests throughout the course of employment. (*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 (*Suastez*).) As *Suastez* explained, "[v]acation pay is simply a form of deferred compensation . . ." (*id.* at p. 780), and is " 'simply an alternate form of wages, earned at the time of other wages, but whose receipt is delayed' " (*id.* at p. 779). Based on these observations, *Suastez* decided that an employer would violate the statutory rule against forfeiture of vested vacation time in Labor Code section 227.3[8] if it adopted a policy providing that vacation time is forfeited when an employee terminates his or her employment before completing a full year of employment. Further authority for the principle that vacation benefits constitute wages is found in *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595 (*Boothby*), which explained that vacation pay falls within

---

8    Labor Code section 227.3 provides in relevant part: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination."

13

the statutory definition of "wages" in Labor Code section 200 as " 'all amounts for labor performed by employees of every description.' " (*Boothby*, at p. 1601.)[9]

Rhea's next premise — that California law prohibits an employer from requiring the forfeiture of vacation time — is also sound as a general principle. As *Boothby* explained, California has a policy of "jealously protect[ing]" wages, and the effect of "[Labor Code] section 227.3 and *Suastez*" is to "prohibit *any* forfeiture of a private employee's vested vacation time." (*Boothby*, *supra*, 6 Cal.App.4th at p. 1601.) Thus, *Boothby* concluded that an employer was not permitted to adopt a " 'use it or lose it' " policy under which employees' already vested vacation time was forfeited if it was not used within a specific time period. (*Id*. at p. 1601.)[10]

The third premise is where Rhea's argument fails. We do not agree with Rhea's contention that by requiring employees to use vested Annual Leave for partial-day

---

[9]     We note that the treatment of vacation pay in California case law as a part of wages or compensation is not unique to California. Indeed, in the course of deciding whether an employer's policy concerning vacation pay was within the scope of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.), the United States Supreme Court made clear that vacation pay was a form of compensation. "[E]xcept for the fact that the payment [for unused vacation time] has been deferred, such payments are as much a part of the employees' regular basic compensation as overtime pay or the payment of salary while the employee is absent on vacation. If in the end the employee elects to receive additional compensation instead of a paid vacation, he or she is receiving the same kind of premium pay that is available for holiday or weekend work. The fact that the payments . . . were due at the time of the employee's termination does not affect their character as a part of regular compensation." (*Massachusetts v. Morash* (1989) 490 U.S. 107, 120 (*Morash*).)

[10]     We note also that the provision requiring an employer to allow an employee to cash out unused vacation time at termination is also not unique to California law. (See *Morash*, *supra*, 490 U.S. at pp. 109-110 [listing state statutes].)

14

absences, General Atomics is requiring a *forfeiture* of vested Annual Leave as that term is used in California law. In *Suastez* and *Boothby* the vacation time was forfeited because the employer *took away* the employee's vested vacation time. *Suastez* and *Boothby* establish that if an employer provides vacation benefits, the employer "is not free to *reclaim* it after it has been earned." (*Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 5, italics added.) Here, General Atomics does not *take away* or *reclaim* vested Annual Leave when an employee is absent for a partial day; it merely requires that the employee *use* the Annual Leave under the terms and conditions that it has created. "The law permits an employer to offer new employees no vacation time" (*Owen v. Macy's, Inc.* (2009) 175 Cal.App.4th 462, 464; see *Henry*, at p. 6), and it correspondingly also affords an employer the right to control the terms under which vacation time may be exercised by employees. (*Suastez*, *supra*, 31 Cal.3d at p. 778, fn. 7 [noting "an employer's right to control the scheduling of its employees' vacations"].) General Atomics has set rules for the exercise of Annual Leave, which it is permitted to do. It has not taken away Annual Leave that has already vested.

*Conley*'s analysis of this issue is sound and persuasive. As *Conley* explained, employees "do in fact *receive* all of the paid time off they have earned — they must simply use that accrued vacation time to make up for partial-day absences." (*Conley*, *supra*, 131 Cal.App.4th at p. 270.) Thus the employer's policy requiring that vacation time be used for partial-day absences "neither imposes a forfeiture nor operates to prevent vacation pay from vesting as it is earned. All it does is *regulate the timing of exempt*

15

*employees' use of their vacation time*, by requiring them to use it when they want or need to be absent from work . . . ."  (*Ibid*., some italics added.)

Acknowledging that an employer is generally permitted to control the conditions under which vacation or annual leave benefits may be exercised, Rhea contends that an employer may nevertheless not require that vacation or annual leave be used for partial-day absences because that provision would violate the salary basis test as it should be applied in California and would accordingly constitute an illegal contract in violation of the Labor Code.  (See Lab. Code, § 219 [Lab. Code wage provisions cannot "be contravened or set aside by a private agreement"].)  Rhea's argument fails because, as General Atomics correctly points out, it is circular.  Rhea is unable to point to anything establishing that under the salary basis test, as applied in California, it is illegal to require an employee to use vacation or annual leave time for a partial-day absence.  That is the principle Rhea is trying to establish with her forfeiture argument, but she has failed to do so.

In addition to relying on *Suastez*, *Boothby* and Labor Code section 227.3 to argue that General Atomics is impermissibly requiring employees to forfeit vested compensation, Rhea points to Labor Code sections 221 through 223, which she contends represent California's antiforfeiture provisions for earned wages.  However, none of those provisions advance Rhea's argument.

Labor Code section 221 states:  "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  Rhea apparently contends that if vacation benefits are categorized as

16

"wages," then an employer impermissibly collects wages from an employee when it requires that the employee use vacation time to cover an absence. We reject Rhea's interpretation of the statute because it would lead to the absurd result that an employer could *never*, under *any* circumstance, require that vacation time be used to cover an absence from work. If California's antiforfeiture laws prevent an employer from setting a policy requiring that vacation or leave time be used for *partial-day* absences because that would constitute an illegal forfeiture of vested wages, an employer would logically be prevented from requiring vacation or leave time be used in *any* increment, even for a full day, or a full week, because the requirement that vacation or leave time be used for those absences would *also* require a forfeiture of vested wages. That cannot have been what the Legislature intended by enacting Labor Code section 221 or any other statute prohibiting an employer from requiring a forfeiture of wages.

Rhea cites Labor Code section 222, which states: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." This provision does not apply here because (1) there is no evidence that General Atomics is subject to a collective bargaining agreement, and (2) General Atomics' practice of requiring exempt employees

17

to use Annual Leave for partial-day absences does not constitute a withholding of any agreed-upon wage.[11]

Finally, Labor Code section 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to *secretly* pay a lower wage while purporting to pay the wage designated by statute or by contract." (Italics added.) As we understand the argument, Rhea contends that this provision applies because requiring employees to use some of their Annual Leave to cover a partial-day absence constitutes the secret payment of a lower wage. Without even addressing whether an exempt employee at General Atomics receives a "lower wage" when exercising Annual Leave, we conclude that Labor Code section 223 plainly does not apply here because there is nothing *secret* about General Atomics' policy.[12]

---

[11] Although Rhea repeatedly mentions Labor Code section 222 as one of the "anti-forfeiture statutes" supporting her position, and we accordingly discuss it here, Rhea concedes in her reply brief that "it does not appear Labor Code [section] 222 applies."

[12] Rhea also contends that General Atomics' policy requiring that Annual Leave be used for partial-day absences contravenes the rule against employers deducting from employee wages to cover cash shortages. (Industrial Welfare Com. wage order No. 4-2001(8); Cal. Code Regs., tit. 8, § 11040, subd. (8).) Rhea contends that working less than a full day amounts to a drop in productivity that is similar to a cash shortage. We disagree. Working less than a full day is not the same as creating a cash shortage. We also reject Rhea's contention that by requiring employees to use Annual Leave for partial-day absences, General Atomics is requiring "the execution of a release of a claim or right on account of wages due" in violation of Labor Code section 206.5. Exercising Annual Leave is not at all similar to executing a release of claim for wages due.

18

2.     *General Atomics Is Not Impermissibly Taking Wages from One Period to Pay for Other Wages Due to the Employee*

Apart from relying on California's antiforfeiture provisions to support her argument, throughout her briefing Rhea repeatedly raises a second point, which she interweaves with her antiforfeiture argument. Rhea contends that California law prohibits General Atomics' practice of requiring employees to use Annual Leave for partial-day absences because it amounts to an impermissible *shifting* of wages that an employee has already earned (i.e., Annual Leave benefits) to cover General Atomics' duty to pay wages for the period of the employee's partial-day absence. Put another way, Rhea argues that General Atomics is impermissibly "substituting" the employee's Annual Leave hours for the employee's salary earned during the partial-day absence.

We begin by reviewing the main authority on which Rhea premises her argument — *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 (*Armenta*). *Armenta* considered whether an employer impermissibly violated the state minimum wage law (Lab. Code, § 1194) when employees were not compensated for some of their work hours, but the *average* of the wages received during the payroll period met the minimum wage standard. *Armenta* held that California law does not permit employers to shift wages paid in one period to wages paid in another period, and that therefore workers must receive the minimum wage for *each hour worked* during the payroll period.

Rhea takes a broad view of *Armenta*, citing it for the principle that, even in contexts *other than* the minimum wage law, wages from one period may not be shifted to cover the employer's independent duty to pay wages for another period. Applying that

19

principle here, Rhea reasons (1) Annual Leave is a form of wages (see *Suastez*, *supra*, 31 Cal.3d at pp. 779-780); (2) General Atomics fails to pay all of the wages that it is obligated to pay for partial-day absences, creating a shortfall; and (3) General Atomics impermissibly requires that employees use their "wages" (i.e., their Annual Leave) to "make up" or "substitute" for the shortfall in wages incurred during partial-day absences.

Without even deciding whether Rhea's broad statement of *Armenta*'s holding is correct, we conclude that Rhea's argument fails because she has not established that General Atomics fails to pay all of the wages that it is obligated to pay during an employee's partial-day absence. It is undisputed that General Atomics continues to pay an employee's full salary during a partial-day absence and that the employee fully continues to accrue Annual Leave during a partial-day absence.[13] Thus, there is no shortfall in wages or compensation during a partial-day absence that General Atomics "makes up" by requiring an employee to use Annual Leave for that period. This is simply not a situation like in *Armenta* where employees worked for a period without receiving compensation. Here, General Atomics' employees continue to receive their full compensation even when they are absent for a partial day.

---

[13]    Indeed, it is undisputed that even upon termination, when an exempt employee has a negative Annual Leave balance, General Atomics does not deduct from the employee's final salary payment. This fact illustrates that General Atomics treats the duty to pay an employee's salary as completely separate from the administration of its Annual Leave policy. General Atomics' employees are *consistently* paid their salary regardless of their Annual Leave balance, and Annual Leave is thus not used to *substitute* for the payment of an exempt employee's salary.

D.  *The Length of the Partial-day Absence Does Not Impact Whether an Employer May Require Exempt Employees to Use Vacation or Leave Time for Partial-day Absences*

In an alternative argument, Rhea contends that even if we decide that *Conley* was correctly decided, *Conley* establishes a limitation, which we should follow, approving the deduction of Annual Leave for partial-day absences only if the absence is *four hours or longer*. As we will explain, we reject Rhea's argument.

In *Conley*, the employer's policy required deductions from vacation leave banks for partial-day absences only when the employee was absent for at least four hours. (*Conley*, *supra*, 131 Cal.App.4th at p. 267, fn. 6.) Accordingly, *Conley* expressly stated that when it used the term " 'partial-day absence' " it was not including an absence of less than four hours. (*Ibid*.) Although *Conley* made that factual clarification, it did not discuss whether its analysis would have differed had the employer followed a policy of deduction from vacation leave banks for absences of less than four hours. Further, we perceive nothing in *Conley*'s analysis to suggest that a different result would be required had *Conley* considered an employer's policy applying to partial-day absences of less than four hours.

As we have discussed, we find no basis in California law for concluding that an employer is prohibited from requiring exempt employees to use their vacation or leave time when they are absent from work for a partial day. Rhea has not identified any reason for us to distinguish between partial-day absences of different lengths. Instead, she simply points out that the employer's policy in *Conley* only covered absences of at least four hours. We conclude that regardless of whether the absence is at least four

21

hours or a shorter duration, a requirement that exempt employees use Annual Leave time for a partial-day absence does not violate California law.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.